**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DePHILLIPO, et al.**<br>***Plaintiffs,***<br>**v.**<br>**TWELFTH STREET HOTEL ASSOCIATES, L.P.**<br>***Defendant.*** | **CIVIL ACTION**<br>**No. 15-cv-03771** |

**PAPPERT, J.** **SEPTEMBER 15, 2016**

**MEMORANDUM**

John DePhillipo ("DePhillipo") sued Twelfth Street Hotel Associates, L.P. d/b/a Loews Philadelphia Hotel ("the Hotel"), alleging that the Hotel was negligent in failing to keep its floor carpeting in a safe condition for business invitees.[1] He claims that while attending a March 21, 2015 wedding at the Hotel, he tripped over a rumpled, untacked rug and sustained various injuries.

Before the Court is the Hotel's motion for summary judgment. Based on a review of the record, no genuine issue of material fact exists as to whether the Hotel caused or had notice of the dangerous condition on its property that allegedly caused DePhillipo's injuries. The Hotel's motion is accordingly granted for the reasons set forth below.

**I.**

On March 21, 2015 at approximately 9:15 p.m., DePhillipo and other guests were walking from a cocktail hour in the Hotel's Howe Room to dinner on a different floor. (Def.'s Mot. for Summ. J., Ex. C ("DePhillipo Dep.") 76:23–77:2, 88:14–17, ECF No. 23.) DePhillipo

[1] DePhillipo's wife Maria ("Mrs. DePhillipo") asserts a claim for loss of consortium.

and his wife left the Howe Room with other guests. (*Id.* 88:14–17, 101:12–15.) Shortly after leaving the Howe Room, DePhillipo tripped over a rumple in the rug and fell to his left. (*Id.* 90: 13–21, 102:11–14.) He was neither carrying a drink nor talking with anyone at the time he tripped. (*Id.* 91:23–92:6.) He was encircled by a crowd of at least six people which would have prevented him from seeing the rumpled section of the rug unless he had specifically been concentrating his eyes on the rug beneath his feet. (*Id.* 107:21–108:6.) DePhillipo was looking ahead rather than down and did not observe the rug or any indications that the rug was rumpled or raised. (*Id.* 91:8–11, 101:4–102:10.) He caught himself on a table and avoided falling to the floor. (*Id*. 80:15–81:1, 102:15–17.)

After someone helped DePhillipo into a chair, he noticed that the rug was rumpled, which he described as the rug being "raised" off the ground. (*Id.* 91:5–7, 100:6–10, 103:5–8.) DePhillipo testified he does not know what caused the rug to be rumpled or at what point it became rumpled. (*Id.* 90:22–91:1, 95:5–96:3, 100:17–19.) DePhillipo does not know whether his left foot became entangled in the rug or whether he caught the sole of his shoe on the rug, though the sole of DePhillipo's left shoe ripped from toe to heel. (*Id.* 85:2–13, 87:11–13, 110:5–7, Ex. P-1.) Shortly after the incident, DePhillipo took a wheelchair down to the lobby and then a cab to the hospital. (*Id.* 108:17–21.)

Several other guests who witnessed the accident provided similar testimony regarding the condition of the rug. Mrs. DePhillipo did not actually see her husband trip; she turned around in time to see him in the air and almost at the table. (Def.'s Mot. for Summ. J., Ex. D ("M DePhillipo Dep.") 54:23–55:8, ECF No. 23.) According to her, the rumpled area was on "the side of the rug." (*Id.* 64:8–12.) Although she did not see the rumpled area before the incident, she believes the rug was already rumpled before he tripped on it because "when [she] turned

around and [she] saw him take off, the rug was rumpled." (*Id.* 65:15–66:1.) However, she does not know how long the rumpled condition was present. (*Id.* 64:13–14.) Two other guests, Jamar Culbreath and Caroline Kohles, saw DePhillipo trip but also testified that they did not notice the rumpled area before the incident. (Def.'s Mot. for Summ. J., Ex. E ("Culbreath Dep.") 30:6–16, Ex. F ("Kohles Dep.") 15:7–9, ECF No. 23.) According to Mrs. Kohles, "[i]t seemed that the rug was loose and it was sort of buckled." (Kohles Dep. 13:9–13, 16:1–7, Ex. KC-3.) The "buckled area was along the edge" of the rug. (*Id.* 15:2–6.) In her deposition, Mrs. Kohles used a piece of paper to give a rough demonstration of the manner in which the rug was buckled. (Kohles Dep. 13:14–14:8, Ex. KC-3, Ex. KC-4.) The way she held the paper showed that the buckle in the rug was "sort of like an upside down bowl, and there [was] an opening." (Kohles Dep. 13:17–22, Ex. KC-3, Ex. KC-4.) Her demonstration also showed that the buckle was about one or two inches high. (Kohles Dep. 13:23–14:10, Ex. KC-3, Ex. KC-4.) When Mrs. Kohles went over to examine the buckled area of the rug, she observed that the rug was "tacked down in one area but not in that particular area, and [she] thought why other people didn't trip on that." (*Id.* 21:19–24.) Like the others, Mrs. Kohles did not know when or how the rug came to be in either its buckled or untacked condition. (*Id.* 15:14–16.)

DePhillipo contends that as a result of the incident he suffered a snapped plantaris tendon and a severely strained left Achilles. (DePhillipo Dep. 58:19–23.) In September 2015, about six months after the incident, he began to experience pain on his right side. (*Id.* 65:10–12.) DePhillipo testified that the pain on his right side was caused by his left leg and by putting pressure on his right leg in order to favor his left. (*Id.* 65:1–8.) Dr. Wapner, DePhillipo's physician, has not offered any opinion as to what caused the strain on DePhillipo's right Achilles. (*Id.* 63:22–64:1.) Although all of the problems with his left ankle, foot, or leg were

resolved within six or seven months of the incident (*Id.* 66:6–20), DePhillipo still complains of pain on his right side, in his ankle and Achilles. (*Id.* 57:3–22, 66:21–67:9.) Since December 2015, he has been wearing a custom-made brace that extends from his right knee to the bottom of his foot to help with pain. (*Id.* 67:7–9.) On frequent occasions, he also wears a sports sock to help decrease the swelling in his right ankle. (*Id.* 55:24–57:2.)

The Hotel filed its Motion for Summary Judgment on July 28, 2016 (ECF No. 23). DePhillipo responded on August 18, 2016 (ECF No. 24)[2] and the Hotel filed its reply brief on August 25, 2016 (ECF No. 26).[3] The Court heard oral argument on the motion on September 13, 2016 (ECF No. 33) and has thoroughly reviewed the record.

**II.**

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. *Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Emp. Health & Welfare Plan*, 298 F.3d 191, 194 (3d Cir. 2002); *see also* Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A mere scintilla of evidence in support of the non-moving party will not suffice; there must be evidence by which a jury could reasonably find for the non-moving party. *Id.* at 252. Summary judgment is appropriate where "the nonmoving party has failed to make a sufficient showing on an essential element of her case

[2] In their response brief, Plaintiffs failed to address the factual assertions set forth in Defendant's motion and the attached statement of material facts in accordance with F.R.C.P. Rule 56(c) and E.D. Pa. Local Rule 7.1(c). The Court will nevertheless consider the case on the merits as if Plaintiffs had followed proper procedure.

[3] On September 9, 2016, DePhillipo filed a Supplemental Memorandum in support of plaintiff's response to the Hotel's motion. The supplemental memorandum purports to rely on a Michigan state court decision and a case from the Eighth Circuit Court of Appeals for the proposition that the character of the rug could allow a jury to infer that the rug's defect had been in existence for sufficient time to permit its discovery. The supplemental memorandum was filed without leave of court. The Court nonetheless read the Michigan and Eighth Circuit cases and allowed counsel to discuss the memorandum at oral argument.

with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

**III.**

To recover in a tort claim, the plaintiff must establish that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached its duty; (3) a causal connection exists between the defendant's conduct and the plaintiff's injury; and (4) the plaintiff suffered actual loss or damage. *See Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1272–73 (Pa. 2006).

DePhillipo was a business invitee of the Hotel on the evening he was injured. Under Pennsylvania law, a business breaches its duty to an invitee if the business (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger. *Canton v. Kmart Corp.*, 470 Fed. App'x 79, 83 (3d Cir. 2012) (citing Restatement (Second) of Torts § 343 (1965)). Under the first prong of the test, an invitee must prove either that the defendant had a hand in creating the harmful condition, or that it had actual or constructive notice of the condition. *See, e.g.*, *Larkin v. Super Fresh Food Mkts., Inc.*, 291 Fed. App'x 483, 485, (3d Cir. 2008), *Swift v. Northeastern Hosp. of Philadelphia*, 690

A.2d 719, 722 (Pa. Super. 1997). If the plaintiff does not raise a genuine issue of material fact about the defendant causing or having notice of the condition, then the business did not breach its duty and summary judgment is appropriate. *Larkin*, 291 Fed. App'x at 485, *see also Cox v. Wal-Mart Stores East, L.P.*, 350 Fed. App'x 741, 744 (3d Cir. 2009), *Corrado v. Super Fresh Food Mkt., Inc.*, 2010 WL 3794961, at *3 (3d Cir. 2010).

The plaintiffs do not allege that the Hotel caused the rug to become rumpled or had actual notice of its condition, and no such inferences can be reasonably drawn from the evidence. The Court accordingly focuses on whether a genuine issue of material fact exists with respect to the Hotel's constructive notice, if any, of the rumpled rug.

While several factors may play a role in determining whether a defendant had constructive notice of a dangerous condition, the length of time for which the condition existed is one of the most important. *See, e.g.*, *Larkin*, 291 Fed. App'x at 485. This is so because "if a hazard only existed for a very short period of time before causing any injury, then the possessor of the land, even by the exercise of reasonable care, would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard." *Craig v. Franklin Mills Assocs., L.P.*, 555 F. Supp. 2d 547, 550 (E.D. Pa 2008) (citing Restatement (Second) of Torts § 343 (1965)). A business is accredited with constructive notice of a condition when "the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it." *Larkin*, 291 Fed. App'x at 485 (quoting *Moultrey v. Great A&P Tea Co.*, 422 A.2d 593, 596 (Pa. Super. 1980)).

Courts commonly treat a plaintiff's failure to produce evidence of timing as dispositive. *See*, *e.g.*, *Larkin*, 291 Fed. App'x at 485, *Cox*, 350 Fed. App'x at 744, *Canton*, 470 Fed. App'x at 86, *Corrado*, 2010 WL 3794961, at *3. In *Larkin*, the plaintiff tripped and fell over a buckled

mat at the entrance to a Super Fresh store. *Larkin*, 291 Fed. App'x at 484. Her foot became trapped in a "pocket" of the mat that was not flush to the ground. *Id.* A videotape of the entrance showed one of the store's employees laying down the mat twenty-three minutes before the incident, but it was not clear enough to indicate the presence or absence of the pockets in the mat at that time. *Id.* The district court granted summary judgment for the defendant, and the Third Circuit Court of Appeals affirmed. *Id.* at 483.

The plaintiff contended that reasonable people could differ as to whether twenty-three minutes was enough time to constitute constructive notice to the store of the existence of the pockets in the mat. *Id.* at 485. The appeals court noted that while the video established that the pockets existed, at most, for twenty-three minutes, it was also possible that they existed for less time than that. *Id.* Moreover, the plaintiff had acknowledged at her deposition that she did not know how long the pockets had existed. *Id.* The court accordingly concluded that "[w]ithout evidence about when the mat became buckled, a fact-finder could only speculate about whether Super Fresh should have discovered and corrected the problem. Therefore, as a matter of law, Super Fresh did not have constructive notice." *Id.*

Similarly, in *Risoldi v. Greenwood Racing, Inc.*, 2004 WL 2166296, at *3 (E.D. Pa. Sep. 22, 2004), our Court granted summary judgment in a slip and fall case for the same reasons. In that case, the plaintiff fractured her hip after tripping over a doormat at the entrance of the Philadelphia Park racetrack. *Id.* at *1. She admitted that she did not see the doormat nor observe its condition prior to her fall, though she testified that after she fell she noticed that the right side of the doormat was "turned up." *Id.* As DePhillipo does here, Mrs. Risoldi contended that the defendants had constructive notice of the mat's allegedly dangerous condition. The court found

otherwise, noting that none of the witnesses who were deposed could testify as to the condition of the doormat before the plaintiff fell. *Id.* at *3.

In *Deane v. Trump Plaza*, 2009 WL 192510, at *1 (E.D. Pa. Jan. 26, 2009), the plaintiff tripped over a transition strip, a metal strip used to hold down carpet in an area where the floor surface changes from carpet to marble. The plaintiff testified that the portion of the transition strip over which she tripped was raised, forming a slight buckle. *Id.* The plaintiff further testified that while other portions of the strip were nailed down, the portion over which she tripped did not have a nail in it. *Id.* Although the plaintiff did not know how long the transition strip had been in the raised position, she argued that a reasonable jury could conclude that it had been raised for a sufficient amount of time to give the defendant constructive notice, especially viewing the missing nails or screws as evidence that the strip had not just come away from the floor. *Id.* at 2. Our Court rejected that argument and granted summary judgment for the defendant because the dangerous condition was "not the sort of defect that necessarily must have developed over a long period of time" and the strip "could have loosened a moment before Plaintiff tripped, giving Defendant no opportunity to find or remedy the dangerous condition." *Id.* The court concluded that without evidence that the condition was present for any significant duration of time, a factfinder could not reasonably infer that a defendant had constructive notice, and any decision would be based on mere guessing or speculation. *Id.*; *see also Felix v. GMS, Zallie Holdings, Inc.*, 501 Fed. App'x 131, 136 (3d Cir. 2012), *Canton*, 470 Fed. App'x at 87.

On the record before the Court, the Hotel did not have constructive notice of the rumpled rug. The Plaintiffs have not adduced any evidence that would allow a factfinder to draw a reasonable inference with respect to the issue of constructive notice. All deponents conceded that they did not know the length of time for which the rug had been in its rumpled state.

(DePhillipo Dep. 90:22–91:1, M. DePhillipo Dep. 64:13–14, Culbreath Dep. 30:14–16, Kohles Dep. 15:14–16.) In fact, all of the witnesses in this case testified that they neither saw nor noticed the rumpled or loose condition of the rug at any time before the incident, leaving unresolved the question of whether the condition existed prior to the incident at all. (DePhillipo Dep. 91:5–11, M. DePhillipo Dep. 64:18–22, Culbreath Dep. 30:6–13, Kohles Dep. 15:7–13.)

In support of their position, Plaintiffs rely on *Reardon v. Meehan*, 227 A.2d 667 (Pa. 1967), for the proposition that, based upon the character of the rug and the alleged defect, a factfinder could reasonably infer that the rumpled condition of the rug had existed for sufficient time to warrant its discovery. In *Reardon,* a rug expert testified that given the particular type of fibre with which the rug was made, the curling of that rug's edges would have occurred within two years of its purchase, well before the incident took place. *Id.* at 464. Citing *Reardon*, Plaintiffs argue that a heavy rug would not show a buckled or rumpled edge instantly and a jury could infer that the defect must have been in existence for sufficient time to permit discovery upon inspection. This case is distinguishable from *Reardon*. Here, there is no evidence in the record which would allow a jury to do anything but guess about the amount of time the rug was in a "rumpled" or "raised" condition.

Plaintiffs also cite *Sears, Roebuck and Co. v. Daniels*, 299 F.2d 154 (8th Cir. 1962), in support of their argument that a reasonable juror could conclude that the Hotel had constructive notice of the allegedly dangerous condition of the rug outside the Howe room. (Pl.'s Suppl. Mem. Of Law (ECF No. 31), at 2–3.) In *Daniels,* the plaintiff fell over a rubber mat in the Sears store's foyer. 299 F.2d at 155. There, however, the plaintiff testified that immediately after she fell, she noticed that the edge of the rubber mat was worn and curled up about two inches from the level of the mat and that she was "most sure" she had tripped over the mat's curled up edge.

*Id.* at 156. There is no such evidence in this case; for one thing, a rubber mat that is "worn and curled up" provides a different basis than exists in this case for an inference that the mat had long been in disrepair.

On this record, a factfinder could only speculate about whether the Hotel could have or should have discovered and corrected the rug's alleged condition. As stated above, none of the deponents saw or noticed the alleged buckle in the rug at any time prior to the incident, and none have knowledge of how long the buckle existed. There is no evidence from which a reasonable juror could conclude or infer that the Hotel had constructive notice of any rumpled or raised condition in the rug. Because there is no genuine issue of material fact about whether the Hotel caused or had actual or constructive notice of the alleged dangerous condition, the Hotel did not breach any duty to DePhillipo and the Hotel's motion for summary judgment is granted.[4]

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.

[4] Because the Hotel was not negligent in failing to maintain safe premises for business invitees as a matter of law, it follows that Mrs. DePhillipo's derivative consortium claim must also fail.